## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| James W. Long | ) | |
| 1660 Lanier Place N.W. | ) | |
| # 511 | ) | Civil Case No, |
| Washington, DC  20009 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Teradata Corporation | ) | |
| 10000 Innovative Drive | ) | |
| Dayton, Ohio 45342 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Robert Trenkamp | ) | |
| Principle, Claraview, a Division of | ) | |
| Teradata | ) | |
| 9900 Doubletree Court | ) | |
| Unit A | ) | |
| Potomac, Maryland 20854 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Michael Owellen | ) | |
| 3130 Fairview Park Drive | ) | |
| Falls Church, Va 22042-4517 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Janet Y. Hong AKA Janet J Baek | ) | |
| AKA Ja Yong Hong AKA Ja Y Baek AKA | ) | |
| Janet Y Lee AKA Janet Y Baek AKA Janet | ) | |
| Baek AKA Janet Lee AKA Janet Y Lee AKA | ) | |
| Janet J Baek AKA Janet Yong Baek AKA | ) | |
| 8608 Morningside Woods Place | ) | |
| Fairfax, Virgina 22031 | ) | |
| Individually | ) | |
| | ) | |
| Defendants. | ) | |

1

**COMPLAINT**

Now comes the Plaintiff, James W. Long, by and through counsel Elena M. Tilly, Esq and

the Tilly Law Firm and files this complaint against the Defendants Teradata Corporation,

Michael Owellen, Robert Trenkamp, and Janet Hong (AKA Janet Y Hong, AKA Janet J. Baek, AKA

Ja Yong Hong, AKA  Ja Y. Baek, AKA Janet Y Lee, AKA Janet Y. Baek, AKA Janet Baek, AKA Janet

Yong Baek, AKA Janet J. Baek) jointly, severally, and individually for unlawful, intentional and

willful discrimination based on race, defamation, false-light invasion of privacy, negligence,  and

intentional infliction of emotional distress with the intent  to harm the Plaintiff's ability to seek

gainful  future employment for reasons set forth herein.

**JURISDICTION**

1.      This action is brought pursuant to 28 U.S.C. § 1331( "the district court shall

have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

the United States") and 1332 (" the district courts have original jurisdiction over lawsuits where

there is complete diversity between the parties and the amount in controversy, exclusive of

interest and costs, exceeds $75,000.00"); Title VII of the Civil Rights Act of 1991, Civil Rights Act

of 1964, § 701 et seq., 42 U.S.C. § 2000e  et seq., and 42 U.S.C. § 1981.

2.      Equitable and other relief is sought under 42 U.S.C. § 2000e-5(g), the Civil Rights

Act of 1991, 42 U.S.C.  § 1981 (a) and the District of Columbia common law of torts  of

defamation, negligence, false –light invasion of privacy, and intentional infliction of emotional

distress.

**NATURE OF THE CASE**

3.      The plaintiff, James Long, is an adult African American male, a resident of the

District of Columbia who, at all times was an at-will employee of V-Soft Consulting Group, Inc,

12305 Wesport Road, Suite 200 Louisville, Kentucky 40245.

4.      Supplied by V-Soft Consulting Group, Inc to provide services for its client,

Teradata Corporation on site, the plaintiff was falsely accused of sexual harassment by two of

the defendants as a pretext to racial animus.   The defendants knowingly conspired to destroy

Mr.  Long's good name and character by informing the Plaintiff, his coworkers, co-employer,

prospective employer and their employees of his termination for sexual harassment without

investigating  the charges.   Ms. Hong, has a past history of making similar complaints against

former coworkers during her tenure at Teradata.   Teradata purposefully obstructed an

investigation of Ms. Hong's claim by V-Soft Consulting, Inc., refusing to answer any questions,

make employees available, even refusing to inform the Plaintiff of his alleged and detailed

"sexual harassment misconduct."

5.      Teradata Corporation, its employees, agents, servants, officers and

representatives subsequently engaged in a cover-up denying that a sexual harassment claim

had ever been made against Mr. Long, following his termination by Teradata Corporation and

suspension without pay by V-Soft Corporation, Inc.  It is reported that approximately two

weeks after the dismissal of the Plaintiff, Teradata began interviewing persons not members

of a protected class, without the educational background or security clearances of Mr. Long

for his same position that Teradata Corporation reported to him was terminated.  To date,

the position remains open.

**PARTIES**

6.      The Plaintiff, James W. Long is a 30 year District of Columbia resident and a member of a protected class, as an African American male.

7.      Defendants are located in the states of Maryland, Ohio, Kentucky and Virginia.

8.       Teradata Corporation is a vendor specializing in data warehousing and analytical application headquartered in Miamisburg, Ohio.  In addition, it services the United States Government under contracts with special clearance requirements and educational backgrounds of its employees and contractors, employing in excess of 15 individuals.

9.      Michael Owellen is an employee of Claraview, a division of Teradata Corporation who resides at 3130 Fairview Park Drive, Falls Church, Virginia  22042.

10.     Robert Trenkamp is an employee of Claraview, a division of Teradata Corporation who resides at 9900 Doubletree Court Potomac, Maryland 20854.

11.     Janet Hong, AKA Janet J Baek, AKA Ja Yong Hong, AKA Ja Y Baek, AKA Janet Y Lee, AKA Janet Y Baek, AKA Janet Baek, AKA Janet Lee, AKA Janet J Baek, AKA Janet Yong Hong is an independent contractor to Teradata Corporation who resides at 8608 Morningside Woods Place, Fairfax, Virginia 22031.

12.      At all times herein, Michael Owellen and Robert Trenkamp were employees of Teradata Corporation, acting within the scope of their employment granted to them by Teradata Corporation jointly, severally, and individually.  Ms. Hong was an independent contractor 1099 to Teradata Corporation an apparent agent of the company and remains so employed.

4

**PROCEDURAL BACKGROUND**

13.     The Plaintiff has exhausted all administrative remedies required as a prerequisite

to filing this civil action.  Specifically, Mr. Long timely filed a Charge of Discrimination with the

United States Equal Employment Opportunity Commission ("EEOC") and the Virginia

Department of Human Rights.  The EEOC and the Virginia Department of Human Rights issued

Mr. Long written notices of his right to sue.  The Plaintiff filed this civil action within 90 days of

receiving notice of his right to sue from the EEOC. (Exhibit A).

**Factual Allegations Common to All Counts**

14.      On or about December 1, 2010, Plaintiff became an at-will employee of V-Soft

Consulting Group, Inc.  He signed a contract for performance of services based on his greater

than seven year experience with United States Homeland Security, college degree, certifications

and special clearance (CBP) necessary for the position for one year.

15.     The Plaintiff was hired by V-Soft Consulting Group, Inc. only after completing a

series of three interviews with the defendant, Michael Owellen, an employee of V-Soft

Consulting's client, Teradata Corporation, and Mr. Long's immediate supervisor, who urged the

Plaintiff to leave his then position at US Customs and Border Protection without notice, as his

services and Customs and Border Protection (CBP) clearance were so essential to the Teradata

Corporation.   In fact, Mr. Owellen stressed that all Mr. Long was required to do was "arrive at

work on time on a daily basis and listen to the "stories" of Dr. Amoss Lewis," the project

manager for Advanced Technology Services Corporation (ATSC).  According to Mr. Owellen,

"the job is not about the work for you."  At this initial meeting, Mr. Owellen openly expressed

his disdain for Dr. Lewis (an African American male) and his aversion to being forced to yield to his authority.

16.     On or about November 25th, 2010, the date of Mr. Long's final interview with Teradata, the Plaintiff also interviewed with Dr. Amoss Lewis, the project manager for Advanced Technology Services Corporation (ATSC).  Advanced Technology Services is Teradata's client and held the government contract serviced by Teradata.

17.     During the Plaintiff's final interview with Mr. Owellen and Dr. Amoss Lewis, Mr. Long was notified that he was hired.  In addition, Dr. Lewis directly stated to Mr. Owellen that he was placing Teradata on notice that once Mr. Long completed his one year contract with Teradata, the Plaintiff was "up for grabs" and it was his intent to hire Mr. Long directly for ATSC.  Immediately following this meeting Mr. Owellen pulled the Plaintiff aside and demanded to know whether he had known Dr. Lewis prior to the interview or had the Plaintiff solicited Dr. Lewis for employment.   The Plaintiff  reported that this was his first and only meeting with Dr. Lewis and he never solicited Dr. Lewis or any employee of ATSC for a job.  Mr. Owellen then queried the Plaintiff as to why Dr. Lewis would want to hire him.   Again, the Plaintiff answered that this could only be based on his credentials.

18.     As an employee for V-Soft Consulting Group, Inc., the Plaintiff performed services directly for its client, Teradata Corporation on a government contract on behalf of and under the auspices of Teradata at Teradata's local office in northern Virginia.

19.     According to the terms of the contract between V-Soft and James Long, during the Plaintiff's tenure with V-Soft, Section 2 of the employment contract states that "employee agrees to abide by all policies and procedures of both V-Soft and its client, Teradata.  Employee

shall be bound by any rule, regulations, or policies established by Client at whose place of

business Employee works…"

20.    Once the plaintiff began working for Teradata, he was assigned directly to a

project that required his CBP clearance.  Mr. Owellen assigned the Plaintiff to the project and

was his immediate supervisor.

21.    During the Plaintiff's tenure with Teradata and V-Soft, his conduct was

professional at all times and his work was rated as above average, without any complaints.  In

fact, the Plaintiff's work and his work ethic were judged so superior by Dr. Lewis, his services

were requested and approved for travel outside of the Washington DC metro area for

assignments.

22.    Although Mr. Owellen required the Plaintiff to utilize his CBP clearance and

contacts, on a daily basis, in order to provide Teradata employees with equipment, software,

and procedures, defendant Owellen specifically directed that the Plaintiff was never to be

provided with a credit card for travel or a VPN fob to allow for remote access directly to the CBP

network.  However, Mr. Long was ordered to assist and expedite Ms. Hong in obtaining a VPN

fob through his CBP contacts.

23.    As a direct result of discrimination, false allegations, cover-up and adverse

employment actions, Mr. Long has suffered significant harm as set forth herein.  Defendants,

Teradata, Owellen, Trenkamp, and Hong are liable under one or more different, theories of

liability recognized under Federal and District of Columbia Law.

**Count I – Title VII**

24.    James Long hereby incorporates all paragraphs (1 through 23 ) of this Complaint into this Count, as if they were fully alleged herein.

25.    42 U.S.C. 2000e-2(a)(1) (2000) in relevant part states: "It shall be an unlawful employment practice for an employer….to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."

26.    Teradata Corporation is an employer as required under Title VII.

27.    At all times, the Plaintiff was a "defacto" employee of defendant Teradata and a member of a protected class.  Teradata exercised substantial and sole control over Mr. Long's compensation and the terms and conditions of his employment.

28.  The Plaintiff's direct and immediate supervisor at all times was defendant Michael Owellen, an employee of Teradata who reported to defendant Robert Trenkamp, also a Teradata employee.  Only defendant Trenkamp possessed the ability to hire and fire the Plaintiff.  Defendant, Owellen supervised Mr. Long on a day to day basis on Teradata's local site and supplied the Plaintiff with electronic equipment, assigned him to projects, dictated the Plaintiff's hours of work, work schedule and controlled the manner in which the Plaintiff performed all of his duties.

29.    During the Plaintiff's tenure at Teradata, he was ordered to work with a Ms. Hong who had a greater than 4 year history of working at Teradata.

30.    The Plaintiff maintained a strictly professional relationship with Ms. Hong at all times, instructing her on multiple systems and computer strategies of which she had no

knowledge.  Of note, Ms. Hong queried the Plaintiff on a periodic basis as to what was his

specific employment status – 1099, independent contractor, or an employee of Teradata??; or

subcontractor and what was the identity of that company.

31.     On or about March 15, 2011, and unbeknownst to the Plaintiff, Ms. Hong

conspired with Owellen and knowingly discriminated against the Plaintiff on the basis of race by

fabricating a  claim of sexual harassment by the Plaintiff, with the intent to cause an adverse

employment action against the Plaintiff.  Ms. Hong is now known to have made similar

complaints of sexual harassment against a former coworker also directed to work with her

approximately 2 years prior to the current events.

32.     Without informing the Plaintiff or his co-employer, V-Soft, of any such claim of

sexual harassment or investigating the allegations of Ms. Hong prior to initiating an

unnecessary and malicious adverse employment action against Mr. Long, Micheal Owellen,

motivated by racial animus, informed his immediate supervisor, Robert Trenkamp that Mr.

Long had sexually harassed Ms. Hong, as a pretext for discrimination.   Trenkamp, accompanied

by Owellen, then made the decision to report the outrageous and unsubstantiated allegations

to the human resources department of Teradata and Teradata employees, in violation of

Teradata's own published Code of Ethics.  Trenkamp informed Human Resources and Teradata

employees that the Plaintiff was to be terminated for sexual harassment and substandard work.

33.     After reporting the false allegations to Teradata and its employees, Trenkamp,

accompanied by Owellen, acting within the scope of their employment, then met with the

Human Resources Department of ATSC and so informed them and employees of ATSC that the

Plaintiff was being terminated for sexual harassment and substandard work.

34.    At all times herein, the agents and apparent agents of defendant, Teradata, acted within the scope of their employment and on behalf of their employer.  Said acts were willful, deliberate, intentional and purposeful.  They were designed to deprive the plaintiff of his federally protected rights freedom from discrimination on the basis of race.

35.    On or about March 18, 2011, the Plaintiff noticed a marked change in the work place environment.  Ms. Hong refused to work with the Plaintiff and coworkers would not speak with him, avoiding even the most basic of conversations.  The Plaitiff was "shunned," relegated to performing work at his desk in solitude and was ordered to post all of his work on the share point site, without explanation by Owellen.

36.    On or about April 1, 2011, Mr. Long reported to work in his usual fashion, without prior notice, only to find that he was locked out of his Teradata email account.  When Michael Owellen finally arrived at work at approximately 0930, he requested the Plaintiff accompany him to the conference room.  Owellen stated that the "Plaintiff was being terminated 1) because his work was substandard;" 2) Long had spoken with Teradata's client, ATSC concerning Teradata's failure to issue him a credit card to pay for work related travel as with other employees; and finally 3) because Long had, in fact,  sexually harassed Ms. Hong on several occasions.  Mr.  Owellen reported that he found it "odd" that the Plaintiff had reported to work in that Teradata had already notified V-Soft Consulting of his termination for sexual harassment.  Owellen refused to inform the Plaintiff of what actions constituted sexual harassment and when these actions occurred, despite the Plaintiff's request.  Moreover, Owellen could not provide the Plaintiff with any instances in which Long's work was adjudicated as substandard.  The Plaintiff denied these outrageous claims and stated that his work had been

10

rated above average and demanded to speak with Owellen's supervisor, Robert Trenkamp. Owellen refused the Plantiff's request and stated that indeed, Trenkamp had ordered the Plaintiff's termination and speaking to him would be useless.  Owellen escorted the Plaintiff to his desk, ordered him to remove all of his personal effects, stripped him of his badge and escorted Mr. Long off of the premises, in full view of all Teradata and ATSC's employees, independent contractors and consultants.

37.     On or about April 1, 2011, at approximately 1030, the Plaintiff contacted V-Soft Consulting.  V-Soft was shocked and denied being aware of the Plaintiff's termination and had no information concerning the charges or claims, but stated they would contact Teradata to determine the nature of the events.

38.     On or about April 1, 2011 at 1208, an email was finally transmitted to V-Soft from  Teradata detailing the termination of Mr. Long for the very first time.

39.     On or about April 7, 2011, Human Resources Department of V-Soft notified the Plaintiff that a claim of sexual harassment had been lodged against him by Teradata and that he was suspended without pay, pending an investigation and thus, would not be assigned to any further projects.  In addition, V-Soft declared that his assignment with Teradata was terminated, as " Teradata has the right to select staff and determine the duration of the assignment. "

40.     On or about April 12, 2011, Teradata denied that the Plaintiff was terminated for substandard work, communication with the client ATSC, or most importantly sexual harassment stating, "there is no reference or suggestion of sexual harassment by Mr. Long."  Teradata stated that Mr. Long's assignment had merely terminated as the result of a completed purchase

order for his services.  According to Teradata, the purchase order for Mr. Long's services was initiated on December 1, 2010, with an end date of March 27, 2011.  Teradata reported they were not in a position to renew the purchase order and the position was terminated.  However, if Mr. Long would sign a "mutual release," Teradata would agree to place the Plaintiff on a list of approved contractors for any future assignments for which Teradata management determined he may be qualified.

41.     On or about April 12, 2011, Teradata denied any responsibility or authority to investigate Ms. Hong or any prior or current claims against her, as she was not an employee of Teradata.

42.     On or about April 7, 2011, Teradata began interviewing persons without Mr. Long's qualification for the same position he occupied, reportedly terminated.  The persons interviewed for the position had no college diploma, CBP certification and were not members of a protected class.  To date, we believe the position remains open.

43.     Once the Plaintiff was suspended without pay by V-Soft, he continued to plead his innocence and requested that V-Soft find him another location.  V-Soft refused, and stated that they had to investigate the claim.  They reported that Teradata refused to cooperate with the investigation because Mr. Long had obtained legal counsel.

44.     On or about May 31, 2011, V-Soft terminated its investigation of the sexual harassment claim first reported and subsequently denied by Teradata.  In its letter to the Plaintiff, V-Soft stated they could find no evidence in support of the allegations of sexual harassment by the Plaintiff.  Moreover, despite the Plaintiff's cooperation with the investigation, Teradata directly refused to cooperate with the investigation of the sexual

harassment claims and Mr. Long was the ONLY person with whom she was able to speak.  Mr.

Long was required to attend a class on sexual harassment, which to date has NEVER been

scheduled.

45.     Despite the "clearance" of sexual harassment charges against the Plaintiff, V-Soft

has not found another assignment for the Plaintiff, but denies that they have terminated the

Plaintiff, stating "they thought he had quit." V-Soft has infrequently contacted the Plaintiff, but

with no job offers, in or out of state, or country.

46.     Defendant, Teradata, was aware of or should have been aware of the

discriminatory actions of its agents, and having such knowledge took no actions to resolve the

adverse conditions forced upon the Plaintiff and thereby ratifying and condoning such unlawful

conduct, that  comprised  acts in violation of 42 U.S.C. § 2000e-5(f)(g).

47.     As a direct result of the defendants' unlawful and racially discriminatory

employment practices, the Plaintiff was damaged and continues to be damaged by suffering

the loss of wages and benefits of employment, irreparable damage to his professional

reputation, to his opportunity for further advancement and security clearances, and to his

opportunity to gain professional experience, and gainful employment, as well as suffered

insults to his self-esteem.  Plaintiff has interviewed with over 30 companies and the issue of his

discharge has caused him economic damages, as he remains unemployed.

48.     In addition, as discriminatory actions of the Plaintiff's supervisor Owellen, and

subsequently Trenkamp is a proximate cause of the adverse employment actions suffered by

the Plaintiff, Teradata is also liable for the actions of its employees under the "cat's paw theory

of liability."

## Count II (42 U.S.C. § 1981)

49.     The Plaintiff hereby incorporates by reference the allegations contained in

paragraphs 1 through 48 of this complaint.

50.     On or about March 15, 2011, and thereafter, the plaintiff, a black male, was

discriminated against because of his race as a result of the actions of Teradata and its agents

Owellen, Trenkamp and Ms.Hong,  jointly, severally, and individually (i) intentionally  and with

malice making a false claim of sexual harassment as a pretext for discrimination; (ii) blatantly

covering up their actions after making the outrageous claim; (iii) firing the Plaintiff and

reportedly terminating his position; (iv)   notwithstanding the fact that the Plaintiff was highly

qualified for his position, in attempting to fill the position with a less qualified non protected

individual to the Plaintiff's former position; and (v) interfering the Plaintiff's ability to contract.

51.     As a result of the defendants' unlawful and racially discriminatory employment

actions, the Plaintiff has been damaged and will continue to be damaged by suffering loss of

wages, loss of benefits of employment, irreparable damage to his professional reputation,

irreparable damage to his opportunity for further employment and irreparable damage to his

opportunity to gain professional job experience.

52.     The action's of Teradata, Owellen, Trenkamp, and Ms. Hong were unlawful and

thus, in violation of 42 U.S.C. § 1981.

## Count III  False –Light Invasion of Privacy

53.     Pleading in the alternative without waiving the above allegations and while

incorporating the factual allegations stated herein above in paragraphs 1- 52 , the Plaintiff will

show that defendants' Teradata, Owellen, Trenkamp, and Ms. Hong jointly, severally and

individually made 1) public to partners, agents, contractors, and employees of Teradata, ATSC, and other indiscriminate occupants of the Teradata workplace sight who informed the Plaintiff that they had been made aware that he had "sexually harassed" Ms. Hong and was to be terminated for the same; 2) a claim of sexual harassment they knew to be false; 3) that was stated to be against the Plaintiff and attributed to be the reason for the Plaintiff's termination by Teradata and subsequently covered up by denial; and 4) placed the Plaintiff in such a false light and as such, is offensive to a reasonably prudent person.

54.     As a direct result of the defendants' actions, the plaintiff was permanently injured.  The Plaintiff suffered adverse employment actions with both Teradata and V-Soft.  In addition, the Plaintiff has been damaged and will continue to be damaged by suffering loss of wages, loss of benefits of employment, irreparable damage to his professional reputation, irreparable damage to his opportunity to secure and maintain security clearances, irreparable damage to his opportunity to gain further professional experience, further advancement, and future employment.

**Count IV- Defamation**

55.     Pleading in the alternative without waiving the above allegations and while incorporating the factual allegations stated herein above in paragraphs 1 - 54, the Plaintiff will show that defendants' Teradata, Trenkamp, Owellen, and Ms. Hong, jointly, severally, and individually made  what they knew to be false statements of sexual harassment by the Plaintiff and said harassment constituted the reason for the Plaintiff's termination.  These statements were negligently provided to employees, partners, contractors and agents of Claraview, a division of Teradata, employees and partners of ATSC and others present at the Teradata

15

worksite, including State Department contractors without privilege.  The statements caused the

Plaintiff special harm, including but not limited to interfering with his ability to obtain and

maintain security clearances and the refusal by ATSC to employ the Plaintiff to provide services

for any of their contracts as a direct result of the defendants' actions.  The actions and

statements of the defendants were made with express malice, as the defendants later denied

the accusation of sexual harassment had ever been made and created an alternative

explanation for his termination.

**Count V - Negligence of Defendant Teradata**

56.     Pleading in the alternative, the Plaintiff incorporates all paragraphs of the

Complaint into this Count, as if they were fully alleged herein in the above paragraphs, and

further alleges as follows:

57.     Mr. Long will prove that at all times, his conduct was professional and in no way

contributed to and/or caused the hostile work environment in which the defendant, Teradata,

knowingly placed him.  At all times, Teradata was on actual and /or constructive notice of the

prior actions of their agent,  defendant  Ms. Hong, before she reported false allegations of

sexual harassment against the Plaintiff later denied by Teradata, in that Ms. Hong had a history

of bringing sexual harassment charges against other employees ordered to work with her.

58.     The false allegations, discrimination, cover-up and termination have negatively

impacted the terms, conditions, and privileges associated with the Plaintiff's employment and

continue to do so.  Mr. Long has suffered many ongoing damages for which Teradata, is

vicariously liable for the conduct of their employees, agents, ostensible agents, officers and representatives, under the theory of agency and apparent agency.

59.     Pleading further, the Plaintiff will show that the Teradata was responsible for acts of negligence which were a cause of the incident, subsequent injuries and damages suffered by Mr. Long which are ongoing and critical to Plaintiff's ability to earn a living.

60.     Such acts of negligence include, but are not limited to:

(a) Failing to exercise ordinary or reasonable care in hiring, training, supervising and maintaining their employees, servants, agents, apparent agents, officers and representatives;

(b) Failing to exercise ordinary or reasonable care in providing a safe working environment;

(c) Failing to recognize, implement and adhere to applicable rules and regulations pertaining to their employees, servants, agents, apparent agents,  officers and representatives and their work environments;

(d) Failing to properly supervise the project in question;

(e) Failing to properly supervise the premises in question;

(f) Failing to devise a proper policy, and adhere to a plan for claims of sexual harassment in their workplace environment;

(g) Failing to train and supervise employees as to prevent the discrimination suffered by the Plaintiff;

(h) Failing to comply with company policies regarding sexual harassment and discrimination, negligent misrepresentations, and covering up allegations by failing to assist with the investigation of same.

61.     Teradata owed a contractually established duty to the Plaintiff to warn the Plaintiff of and/or correct hidden dangers.   Further, as Teradata had actual knowledge of the acts and omissions created by its agents, apparent agents, officers, and employees, they had a duty to take reasonable prudent precautions under the circumstances to reduce or eliminate the unreasonable risk from those conditions, and instead choose to participate in a cover-up of discriminatory actions.

62.     As a direct and proximate result of the allegations contained herein, the Plaintiff suffered the damages set forth herein.

### Count VI – Intentional Infliction of Emotional Distress

63.     Pleading in the alternative, the Plaintiff incorporates all paragraphs 1 – 62 of the Complaint into this Count, as if they were fully alleged herein, and further alleges as follows:

64.     Teradata Corportaion,  Michael Owellen, Robert Trenkamp, and Janet Hong each acted (as set forth herein) intentionally and/or recklessly, in a manner which was extreme and outrageous under the circumstances, and which caused severe emotional distress to James Long.

65.     Defendants, Ms. Hong and Owellen engaged in outrageous conduct when they conspired to intentionally and recklessly make a false claim of sexual harassment against the Plaintiff.   Once these actions were taken, Defendant Teradata, refused to investigate that actions and instead informed Human Resources departments of both Teradata and ATSC, as

18

well as negligently making the information known throughout the Plaintiff's work site.

Moreover, after failing to inform either the Plaintiff or his co-employer of what the behavior

constituted the harassment or when these actions occurred, Teradata chose to make known

that the Plaintiff was being terminated for these allegations.  When confronted and after

informing the Plaintiff's co-employer that he was dismissed for sexual harassment, Teredata

denied these allegations and chose to engage in a cover-up.

66.      As a direct result of the outrageous conduct by Teradata, Owellen, Ms.Hong, and

Trenkamp, the Plaintiff is distraught, and his contract with V-Soft remains in limbo.  V-Soft has

not provided the Plaintiff with any further assignments and claims they assumed he quit.   ATSC

will not consider him for any additional assignments, and the Plaintiff has been unsuccessful in

obtaining security clearances necessary for employment in his technical field.  He cannot find

employment and his reputation has been irreparably damaged by these false allegations that

were so extreme, exceeding the bounds of decency.

WHEREFORE, the Plaintiff petitions this Court and respectfully prays and requests the

following:

1.   That the Court grant judgment the Plaintiff compensatory damages as provided by

42 U.S.C. §2000e-5 (g)(1) or in the alternative 42 U.S.C. § 1981 (a);

2.   That the Court grant  judgment against the Defendants for Defamation in the

amount of $2,000,000.00.

3.   That the Court grant judgment against the Defendants for false-light invasion of

privacy in the amount of $2,000,000.00.

4.  That the Court grant judgment against the Defendants for negligence in the amount of $300,000.00.

5.  That the Court grant judgment against the Defendants for intentional infliction of emotional distress in the amount of $2,000,000.00.

6.  That the Court grant judgment against the Defendants for punitive damages so as to deter the Defendants from further engaging in similar illegal conduct in the amount of  $10,000,000.00.

7.  That the Court grant the Plaintiff attorneys' fees and all costs incurred since the Plaintiff retained counsel to pursue this action;

8.  Any additional relief the Court deems fair, just, and necessary to make the Plaintiff "whole."

TRIAL BY JURY IS DEMANDED ON ALL ISSUES.

Respectfully submitted,

/s/  Elena M. Tilly
Elena M. Tilly, MD, Esq # 502996
The Tilly Law Firm, PLLC
6931 Arlington Road
 Suite # 302
Bethesda, Maryland 20814
PHONE 301-312-6413
FAX 301-312-6431
etilly@tillylawfirmmd.com
Counsel for Plaintiff